No. A-CV-06-89
# Supreme Court of the Navajo Nation

**Rose Begay, Appellant,**
v.
**Eugene Peter Begay, Appellee.**
**Decided December 6, 1989**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Loretta Morris, Esq., DNA-People's Legal Services, Inc., Crownpoint, New Mexico, for the Appellant; and Freddie Miller, Esq., Crownpoint, New Mexico, for the Appellee.

Opinion delivered by Austin, Associate Justice.

Appellant, Rose Begay, filed this appeal challenging the district court's disposition of Mutual Help Housing pursuant to a divorce decree. The decree was entered in the Crownpoint District Court on February 9, 1989. The only issue on appeal is whether the court abused its discretion in awarding the Mutual Help Housing, the sole marital asset, to appellee, Eugene Begay. We vacate and remand for rehearing.

## I

In 1974, appellee, who was then married to Rose Becenti, applied to the Navajo Housing Authority (Housing Authority) for Mutual Help Housing (the house) in Crownpoint, New Mexico. The Housing Authority rejected appellee's housing application, but told him that he could be put on a waiting list and appellee agreed. Rose Becenti died shortly thereafter and on August 17, 1979, appellee, who was from Shiprock, New Mexico, married appellant, a resident of Crownpoint.

Appellee's application was accepted and he was offered housing in Crownpoint in October of 1981. Both appellant and appellee signed the Housing Authority agreement. In August of 1982, appellant, appellee, and three of appellant's children by a different marriage moved into the house. Initially, only appellee worked, while appellant attended Crownpoint Institute of Technology. Only appellee has made payments on the house through payroll deduction.

The marriage foundered. Appellant complained that appellee was uncommunicative and unhelpful around the house. Appellee, on the other hand, alleged

that appellant was unfaithful while attending the Institute. As a result, appellee moved out of the house in July, 1986. Despite moving out, appellee continued to make house payments. Appellant began working in the fall of 1988 and on November 21, 1988, appellant filed this action for divorce. Neither party contested the grounds for divorce, only the property settlement attendant thereto.

After a hearing, the court granted the divorce and awarded the house to appellee; an effective 100-0 split of the marital assets. The divorce decree recited no reasons for this division. The hearing transcript reveals that the court struggled to reach a decision and apparently based its decision on several different grounds.

The court first concluded that appellant would be unable to make payments on the house and to appellee for his share of the community property as he requested. The court also found that the marriage lacked solid foundation, lasting less than 10 years and producing neither children nor substantial assets. The court was also persuaded that appellant could easily acquire another house in Crownpoint, but that appellee could not. Finally, the court found appellant's conduct blameworthy and appellee's praiseworthy.

## II

### A

The Begays' interest in Mutual Help Housing is a property interest. *Navajo Housing Authority v. Betsoi*, 5 Nav. R. 55 (1984). Their interest in the house is defined primarily by their agreement with the Housing Authority and has dual aspects. The agreement is essentially a "lease-purchase" agreement entitling them to lease the home and, upon discharging their contractual obligations, to become homeowners. Both interests are legally cognizable property interests.

Appellee contends that the house is not community property because he applied for housing prior to marrying appellant. Consequently, he argues, the house is his separate property and the trial judge properly awarded the house to him. Appellee's contention lacks merit. Community property includes all property "acquired by either husband or wife during the marriage." See 9 N.T.C. § 205. Appellee acquired no property interest in the house until both he and appellant entered into the housing agreement, two years after their marriage.

The Mutual Help Housing agreements are entered into in compliance with federal regulations. 24 CFR § 805.401 *et. seq.*; *see generally*, Ulmer, *The Legal Origin and Nature of Indian Housing Authority and the HUD Indian Housing Programs*, Am. Indian L. Rev., Vol. XIII, no. 2. Neither federal law, however, nor the agreement itself contains provisions regarding disposition of Mutual Help housing leasehold interests in divorce actions. The Begays' "lease-purchase" agreement is community property, and its disposition is not governed by the agreement; therefore, it is subject to Navajo Nation laws controlling disposition of community property. See 9 N.T.C. § 205; 9 N.T.C. § 404.

In most instances, community property is to be divided equally. *See, e.g., Willie v. Willie*, 4 Nav. R. 31, 32 (1983); *Estate of Tsosie*, 4 Nav. R. 198 (Window Rock Dist. Ct. 1983). Where property is divided pursuant to a divorce, however, the Tribal Code directs the trial court to "provide for a fair and just settlement of the property rights between the parties." 9 N.T.C § 404. Section 404 does not mandate equal division of community property. It grants the trial court discretion to make unequal divisions of community property. *See, Battese v. Battese*, 3 Nav. R. 110, 111 (1982); *but cf. Ellsworth v. Ellsworth*, 564 N.M. 133, 639 P.2d 97 (1981) (requiring the trial court to divide community assets equally); and see qenerally, 24 Am. Jur. *Divorce and Separation* § 930 (1983).

We do not believe that section 205 plays no role in the division of marital property pursuant to section 404. We believe that section 205 means that the trial court shall distribute the property based on a preference for equal division of community property. *See, Livingston v. Livingston*, 5 Nav. R. 35 (1985); *Willie v. Willie*, 4 Nav. R. at 32. This approach best harmonizes the requirements of sections 205 and 404.

Dividing community property based on a preference for equal division means that the trial judge must divide community property equally absent specific reasons justifying unequal division. Moreover, where the trial judge is persuaded that unequal division is justified, the judge must recite reasons justifying unequal division in the divorce decree. The preference requirement does not put burdens on the litigants. It simply creates a particular structure for the judge's deliberative process and where the judge concludes that unequal division is appropriate, to reduce those reasons to writing for appellate review. Such findings and conclusions are essential if we are to police the borders of permissible discretion. In this case, the trial judge gave no reasons for awarding the entire house to appellee and we thus conclude that a bare declaration awarding the house to appellee was inadequate support.

## B

In reaching a settlement of unequal proportions, a judge is to be guided by the factors enumerated in *Shorty v. Shorty*, 3 Nav. R. 151 (1982). We now review the applicable *Shorty* factors and consider their application to this case.

1. The economic circumstances of each party, including:
   a. age;
   b. health;
   c. station (work or social position);
   d. vocational skills or need for retraining as to acquire new skills;
   e. employability; and
   f. opportunity to acquire capital assets.

Where one of the parties is aged or in poor health, the trial judge may consider

these factors in making unequal disposition of the marital property. *See, Sells v. Sells*, 5 Nav. R. 104 (1986). Similarly, if one spouse demonstrates that he or she has foregone employment opportunities or training during the marriage such as to impair employability, the trial judge may also consider this factor and award that spouse a greater portion of the marital property.

Both appellant and appellee were working when the divorce action was filed. Moreover, appellant attended Crownpoint Institute during the marriage suggesting that she did not forego the opportunity to acquire vocational skills. Thus, nothing in the record suggests that either party was entitled to a greater share of marital assets premised on inability to work.

2. Contribution of the spouse as homemaker or contribution of each spouse to the household.
3. Duration of the marriage.

Marriage is "a community to which each spouse contributes, by building it up." *Willie v. Willie*, 4 Nav. R. at 32. Community property reflects both contributions of labor and material goods to the marriage. The rationale behind the presumption of equal division is that "the homemaking partner has contributed services which enabled the financially supporting partner to achieve his or her station in life, and in so doing the homemaking partner has lost ground in the job market." *Jasper v. Jasper*, 107 Wis. 2d 59, 68, 318 N.W. 2d 792, 797 (1982).

Duration of the marriage is equally important. Long-term marriages provide evidence that the spouses have developed a mutually dependent working relationship and long-term relationships are therefore more likely to require equal division of marital property. Accordingly, the trial judge may consider the nature and quantity of the contribution in awarding marital property.

Appellee made all of the payments on the house, even after appellant and appellee separated. In addition, appellee supported appellant and her children while she attended the Crownpoint Institute. The record suggests that this factor was decisive in the trial judge's ruling. On the other hand, the record reflects that appellee was not helpful in maintaining the household, but largely isolated himself in the bedroom where evening meals were brought to him. Thus, the record suggests that both spouses contributed to the community.

The record also reveals that both appellant and appellee were married twice previously. Their marriage lasted only 6 years during which time they acquired no significant assets other than the house. By contrast, in *Sells v. Sells*, 5 Nav. R. 104, the court awarded the wife of 28 years alimony to compensate her for the labor she invested in the marriage. Unlike the marriage partnership in *Sells*, the parties in this case built no permanent foundation for lifelong commitment. Thus, a trial judge could find that the marriage lacked the kind of solid working relationship which mandates equal division.

4. Liabilities of the parties.

Neither party has incurred liabilities.

5. Who has the children.

The parties had no children; therefore, there is no issue regarding child-rearing. We note, however, that awarding children to one spouse may also entitle that spouse to a greater share of marital property.

6. Other relevant factors.

One factor which is not relevant to constructing a property settlement is an allegation of adultery. *Shorty v. Shorty*, 3 Nav. R. 151. In *Shorty*, we held that a court must divide community property "without considering the fault or marital misconduct of either party." 3 Nav. R. at 153. The purpose of equitable distribution statutes such as section 404 is to award property to spouses such as to reflect their contributions of material and labor to the marriage and to put them on an equal footing, not to penalize or reward them for their acts during the marriage. Appellee introduced testimony at the hearing indicating that appellant was unfaithful. Moreover, in awarding the house to appellee, the trial judge noted the appellants alleged misconduct. Evidence of appellant's misconduct was irrelevant and considering such evidence was error.

## III

Upon rehearing if the trial judge concludes that division of interest in the house is proper it will be necessary to divide the house. While the trial judge is free to adopt any method which achieves an equitable result, we briefly discuss methods available in situations like this where no assets are available to offset awarding property to one spouse.

First, the court may retain jurisdiction over the property and award the property at a later date when its value can be adequately appraised and distributed. *See, Anderson v. Anderson*, 64 Cal. App. 3d 36, 134 Cal. Rptr. 252 (1976). Second, the court may award title to one spouse but actual use and possession to the other for a specified period. Third, the court may award the house to one spouse with an offsetting monetary award to the other. *See, Sheppard v. Sheppard*, 104 Idaho 1, 655 P.2d 895 (1982).

To make an offsetting monetary award, it is necessary for the court to find a value for the lease-purchase agreement. This presents difficulties because of the unusual nature of the Begays' interest. As noted, the Begays possess a lease-hold interest in the house for a 25-year term. During the lease term, no equity accrues. Any equity payments are placed in a separate account which "speeds-up" ownership by application of the account-equity to the final payments leading to ownership. Thus, while their lease-hold interest is a well understood property interest, their interest in becoming homeowners is far more speculative because it is contingent on discharge of their contractual obligations during the lease term.

The Begays' interest in owning the home is so speculative, consequently, the

best value of the house may be equal to the amount of funds expended to date. Appellee showed that he spent $4600.00 in maintaining the lease. The district court could, therefore, award the spouse not receiving the house $2300.00, or if the court is persuaded that a different figure is fair then such figure as the court finds fair in the circumstances.

The district court's order is vacated and the case is remanded for rehearing.